**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| FAIP NORTH AMERICA, INC. | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 05-CV-4002 |
| | ) | |
| v. | ) | Judge Charles P. Kocoras |
| | ) | |
| SISTEMA s.r.l., an Italian corporation, | ) | Mag. Judge Arlander Keys |
| SISTEMA USA, Inc., an Indiana | ) | |
| corporation, GÖKALP ONAY, an | ) | |
| individual, and JOHN TOBINSKI, | ) | |
| an individual | ) | |
| Defendants. | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................ 1

II. BACKGROUND ......................................................................................................... 1

III. THIS COURT HAS PERSONAL JURISDICTION OVER SISTEMA S.R.L. ........................ 5

    A. Legal Standards................................................................................................. 5

    B. Sistema Is Subject to this Court's Specific Personal Jurisdiction Under the Illinois Long-Arm Statute ............................................................................................... 6

        1. Sistema s.r.l. Itself Caused Injury to FAIP In Illinois..................................... 6

        2. Sistema s.r.l. Is Responsible for the Actions of its Agents ............................ 7

    C. Sistema Is Subject to this Court's Personal Jurisdiction Under Rule 4(k)(2)................... 10

    D. Exercise of Jurisdiction Over Sistema Will Not Violate Traditional Notions of Fair Play and Substantial Justice .............................................................................. 12

    E. Discovery Is Warranted ................................................................................... 13

IV. NO COUNT OF FAIP'S AMENDED COMPLAINT IS PREEMPTED ............................. 13

V. CONCLUSION......................................................................................................... 15

**I.    INTRODUCTION**

Sistema s.r.l.'s motion to dismiss should be denied because Sistema s.r.l. ("Sistema") failed to challenge an independent and sufficient basis for jurisdiction. It challenges jurisdiction by arguing that it is not subject to jurisdiction through its subsidiary, but it entirely ignored the pleadings that Sistema itself misappropriated trade secrets owned by FAIP North America Inc. ("FAIP"). (*See, e.g.,* Amended Complaint, ¶¶ 24-28, 34-43, 72.) Left unchallenged, such pleadings are alone sufficient to establish jurisdiction over Sistema in this jurisdiction. *See Janmark, Inc. v. Reidy*, 132 F.3d 1200, 1202 (7th Cir. 1997) ("there can be no serious doubt after *Calder v. Jones* that the state in which the victim of a tort suffers the injury may entertain a suit against the accused tortfeasor.").

The presence of Sistema in this action, moreover, is critical to the relief sought by FAIP, namely, a full accounting of all misappropriated trade secrets and an injunction against continued misuse of such trade secrets. Sistema does not dispute that it possesses FAIP trade secrets. It argues instead that it should be given a "pass" simply because its United States distributor *also* misappropriated and used FAIP trade secrets. This is not the law. Sistema must account for its own illegal activities.

In addition, FAIP has charged Sistema with violating two federal statutes. (*See* Counts I and II of the Amended Complaint.) The jurisdiction of this United States District Court is thus not limited by the Illinois long-arm statute. This Court may separately exercise jurisdiction over Sistema pursuant to Fed. R. Civ. P. 4(k)(2). Sistema, which does millions of dollars of business annually in the United States, has purposefully availed itself of the laws and protections of the United States. *See ISI Int'l, Inc. v. Borden Ladner Gervais*, LLP, 256 F.3d 548 (7th Cir. 2001).

Finally, and despite all Defendants' attempt to miscast Plaintiff's Amended Complaint, the non trade-secret state law counts of the Amended Complaint are not preempted by the Illinois Trade Secret Act. In these counts, Plaintiff does not rely on the existence of trade secret protection to state its claims against the Defendants. Defendants' motion as to these counts also should be denied in its entirety.

**II.   BACKGROUND**

FAIP is a leader in the manufacture, sale, marketing and distribution of pressure washers, pumps and high pressure hose to retailers and OEMs throughout North America. FAIP

1

maintains its headquarters in Elk Grove, Illinois, which is within this judicial district. (*See* Declaration of Gus Alexander ("Alexander Decl."), filed with this Opposition, at ¶ 2.)

Sistema competes with FAIP. *Id.* at ¶11. It makes electric pressure washers and causes them to be distributed for sale throughout the United States. (*See* Declaration of Christine Cochran ("Cochran Decl."), filed with this Opposition, at Ex. 1.) Currently, Sistema's products are offered for sale in the United States by at least the following retailers: Target.com, Walmart.com, Amazon.com, and Sam's Club Puerto Rico. (Alexander Decl., at ¶ 16.)

Although Sistema maintains its headquarters in Italy, it has substantial contacts with the United States in general and with Illinois in particular. Particularly relevant to the present motion is that Sistema wrongfully acquired FAIP's trade secrets, which it knew to be located at FAIP's headquarters in this judicial district, and thereby caused injury to FAIP within this judicial district. (Amended Complaint, at ¶¶ 9, 24-28, 34-43, 72; Alexander Decl. at ¶¶ 8-11.) Sistema does not even attempt to challenge the relevant allegations in the Amended Complaint.

A further specific example of Sistema's wrongful activities is set forth in detail in the attached declaration of Gus Alexander, who is the President and Chief Executive Officer of FAIP. During a negotiation with Home Depot in July 2002, Mr. Alexander received an email from a Home Depot representative, who forwarded an unsolicited email offer by Sistema to sell its pressure washers to Home Depot. (Alexander Decl. at ¶¶ 9-10; Ex. A.) As is evident from this communication, the Home Depot representative was surprised at Sistema's offer. (*Id.* at Ex. A.) After remarking that the offer was made prior to any negotiation, the Home Depot buyer then indicated to Mr. Alexander that "I have never even talked with these people and the[y] are e-mailing me this kind of pricing out of Italy." (*Id*.) He further indicated his surprise by asking the question: "What's up with that????" (*Id*.)

At the time of this email, FAIP did not know that the Sistema entities had ready access to FAIP's highly confidential financial information. (Alexander Decl., at ¶ 10.) Among other things, FAIP was unaware that defendant Tobinski, while still employed by FAIP in Illinois, was acting on behalf of the Sistema entities. (Amended Complaint at ¶¶ 32-39.) By virtue of his position as a computer administrator at FAIP's Elk Grove facility, Tobinski was able to access a host of highly confidential FAIP information including calendars and schedules of meetings with retailers and buyers, data relating to price of equipment sold by FAIP, the profitability of such equipment, the identity of individual retailers, customers and buyers, and their contact

2

information, the volumes of equipment purchased by such retailers and buyers, and other similar confidential financial data. (Alexander Decl., at ¶¶ 3-4, 10.) Sistema could easily put such information to use. Particularly in a "blind" negotiation, Sistema was in a position to win business away from FAIP by offering more aggressive pricing than FAIP. (*Id.* at ¶ 5.) In addition, by knowing the facts underlying FAIP's pricing and profit information, Sistema was able to more aggressively bid against FAIP. (*Id.*) Based on the aggressive nature of its offer to Home Depot, as evidenced by the incredulity expressed by the Home Depot buyer, and based on Sistema's access to FAIP's information, Sistema obviously used information misappropriated from FAIP's Illinois headquarters to tailor its bid to Home Depot. (*Id.* at ¶ 10) Sistema's unsolicited bid to Home Depot further directly caused injury to FAIP here in Illinois. As is evident from the email itself, FAIP was instructed to "hold the price," which it did. (*Id.* at ¶ 9.)

Although Defendant Onay, who is the General Manager of Sistema USA, transmitted the email to Home Depot, the email itself makes clear that Sistema s.r.l. is responsible for both the offer and its terms. The email introduces the company as "an electric pressure washer manufacturing company from Italy." (Alexander Decl. at Ex. A.) It thereafter describes the company by reference to its European operations: "Sistema … has succeeded in capturing approximately 25% of the European market in only 10 years." (*Id*.) The communication further states "Our Italian based facility has also relocated to a larger facility which will allow us to produce a greater quantity of product in relationship to increase demand." (*Id*.) At no point does the email suggest that Sistema USA alone is responsible for the offer. To the contrary, the entire tone of the email reflects the backing of the Italian company, Sistema s.r.l.

Indeed, Mr. Onay quotes prices "Exwork Italy," which means that Sistema s.r.l., and not its distributor, Sistema USA, set the prices. (Alexander Decl., at ¶ 9.) Moreover, the email promises a "1 Year Manufacturers guarantee." (*Id.* at Ex. A.) Obviously, Sistema s.r.l., as the manufacturer, was the party on whose behalf this "guarantee" was offered. Finally, it is also evident that the Home Depot buyer believed that the offer was made by Sistema s.r.l.: "I have never even talked with these people and the[y] are emailing this kind of pricing *out of Italy*." (*Id.*, emphasis added.) Sistema, therefore, illegally obtained FAIP's confidential information, including information relating to Home Depot, and then used it to compete against FAIP.

Sistema undoubtedly communicated many offers and conducted many negotiations for its products based on information wrongfully obtained from FAIP, the extent and nature of which

3

negotiations cannot possibly begin to be known without the force of discovery. Having been exposed to FAIP's information, it would be impossible for Sistema not to use it in constructing bids to other entities. Every sale made of a Sistema pressure washer in the United States thus implicates information that Sistema wrongfully obtained from FAIP.

Despite the foregoing, Sistema complains that it would be "unfair" for this Court to exercise personal jurisdiction over it. There is nothing unfair, however, in requiring Sistema to answer for its tortious activities. Sistema misappropriated FAIP information from Illinois and it should not be heard to complain that litigating in Illinois will be an unconstitutional burden. To the contrary, it would be manifestly unfair to deprive FAIP of an opportunity to present its case against Sistema. Sistema, moreover, should not be permitted to continue accessing and using trade secrets that it misappropriated from FAIP in Illinois. The *only* way that FAIP can obtain complete relief is if Sistema s.r.l. is made a party to this action.

In response to Sistema's Motion to Dismiss, FAIP inquired of Sistema as to an alternative jurisdiction in which this action could have been brought. (Cochran Decl. at ¶ 2; Ex. 2.) Sistema thereafter took the position that there is no court *anywhere in the entire United States* that may exercise jurisdiction over it. (*Id.* at ¶ 3; Ex. 3.) Sistema has thus attempted to make itself unaccountable for its tortious behavior. According to Sistema, FAIP has no recourse against Sistema in any United States court, federal or state, for the acts alleged in the Amended Complaint. This cannot be, and is not, the law.

Sistema sends into the United States millions of dollars of pressure washers on an annual basis (*Id.* at Ex. 4), applies for and holds intellectual property issued by the United States Patent and Trademark Office (*Id.* at Ex. 5), stands behind "manufacturers" warranties and guarantees issued to purchasers in the United States (Alexander Decl. at Ex. A), has obtained an Underwriters' Laboratories certification that it applies to each and every Sistema pressure washer sold in the United States (*Id.* at ¶ 21, Ex. B), and routinely attends trade shows throughout the United States in order to conduct and further its business (Alexander Decl. at ¶¶ 13-17). Indeed, Sistema likely already consented to jurisdiction in Illinois when it entered into Underwriters' Laboratories certification agreement. (*See, e.g.*, Cochran Decl. at Ex. 7.) These contacts demonstrate that Sistema s.r.l. has intentionally and purposefully availed itself of the laws and protections of the United States in general and Illinois in particular. This Court can and should exercise its jurisdiction over Sistema s.r.l.

4

### III. THIS COURT HAS PERSONAL JURISDICTION OVER SISTEMA S.R.L.

#### A. Legal Standards

In responding to a motion to dismiss for lack of jurisdiction under Rule 12(b)(2), a plaintiff need only set forth a prima facie case for personal jurisdiction. *Hyatt Intern. Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). In ruling on a motion to dismiss, the Court accepts as true the allegations of FAIP, the nonmoving party, as made in the Amended Complaint and the evidence submitted herewith. Additionally, the Court must resolve any questions of fact in favor of FAIP, the nonmoving party. The Seventh Circuit has found these requirements particularly applicable where a motion to dismiss was based solely on written materials. *Nieman v. Rudolf Wolff & Co., Ltd.*, 619 F.2d 1189, 1190 (7th Cir. 1980) ("Because the district court has decided the defendants' motion solely on the basis of written materials, [the plaintiff] need only show a prima facie case for personal jurisdiction. In addition, [the plaintiff] is entitled not only to the acceptance of all undenied factual assertions in his submissions, but also to the resolution in his favor of all disputes about relevant facts." (internal citations omitted)).

The Illinois long-arm statute provides for personal jurisdiction to the full extent of the Illinois Constitution and the Constitution of the United States. 735 ILCS 5/2-209(c); *Hyatt*, 302 F.3d at 715 (finding that the limits of the Illinois Constitution are coextensive with federal due process considerations). The Supreme Court has explicitly recognized that personal jurisdiction in a particular state is proper where a defendant directed its conduct in such a manner as to be felt in that state. *Calder v. Jones*, 465 U.S. 783 (1984). That is, jurisdiction is proper in a state in which the effects of the intentional conduct were suffered. *Id.* at 789. The law of this circuit dictates that "there can be no serious doubt after *Calder v. Jones* that the state in which the victim of a tort suffers the injury may entertain a suit against the accused tortfeasor." *Janmark*, 132 F.3d at 1202 (internal citations omitted).

Additionally, where a complaint includes a federal claim and the defendant denies that any state could exert personal jurisdiction in connection with such claim, Federal Rule of Civil Procedure 4(k)(2) allows the aggregation of a foreign defendant's contacts with the United States to determine minimum contacts. *Flag Co. v. Maynard*, 376 F.Supp.2d 849 (N.D. Ill. 2005); *Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 940 (7th Cir. 2000).

### B. Sistema Is Subject to this Court's Specific Personal Jurisdiction Under the Illinois Long-Arm Statute

#### 1. Sistema s.r.l. Itself Caused Injury to FAIP In Illinois

The unrebutted allegations of the Amended Complaint, which must be accepted as true, establish that Sistema s.r.l. directly injured FAIP in Illinois. (Amended Complaint, at ¶¶ 9, 24-28, 34-43, 72.) Sistema first misappropriated FAIP's trade secrets from Illinois and then used them to cause injury to FAIP in Illinois. Sistema itself is thus an integral part of the present action, and Illinois is the relevant locus of activity. The existence of Sistema's distributor, Sistema USA, Inc., and the fact that its distributor may also have misappropriated FAIP's trade secrets, does not excuse Sistema from answering for its own activities.

Under the prevailing law of this Circuit, a court may constitutionally exercise jurisdiction over a non-resident defendant who intentionally caused injury in the forum state. *Janmark*, 132 F.3d at 1202 ("The state in which the injury (and therefore the tort) occurs may require the wrongdoer to answer for its deeds even if events were put in train outside its borders."). Despite Sistema's conclusory statements to the contrary, the presence or absence of the tortfeasor within the jurisdiction at the time of the tort is not the legal standard. Based on the "effects" standard of jurisdiction, the plaintiff's connection with Illinois (*i.e.*, the plaintiff's injury) is the dispositive factor. *Bunn-O-Matic Corp. v. Bunn Coffee Service, Inc.*, 88 F.Supp. 914, 920 (C.D. Ill. 2000) ("A tortfeasor who commits a tort against an Illinois business so that the injury is felt in Illinois, submits himself to the jurisdiction of the Illinois courts."); *Filipowski v. Rogovin*, 2000 WL 983727 at * 4 (N.D. Ill. 2000) ("[P]laintiff was injured in Illinois when his comic books were stolen in Illinois. …[D]efendants purchased the comic books knowing they had been stolen in Illinois. It should be no surprise to defendants, then, that they are sued in Illinois.").

Through their employment at FAIP's offices in Illinois, Onay and Tobinski were privy to FAIP's most intimate technical and sales information, and had, in Illinois, executed Conflict of Interest Agreements commensurate with their confidential clearance. (Amended Complaint at ¶¶ 18, 29.) Sistema's acquisition of information misappropriated from Illinois by defendants Onay and Tobinski, either as a result of their respective employment at FAIP or their subsequent intrusion into FAIP's protected computers, caused injury to FAIP. Sistema itself knew that FAIP is located in Illinois, and therefore, purposefully injected itself into Illinois when it obtained FAIP's trade secrets. (*Id*. at ¶ 9.) Additionally, Onay and Tobinski improperly accessed FAIP's computer network, particularly the email of FAIP CEO Gus Alexander, by logging into FAIP's

6

email server in Illinois, and transmitted the confidential information to Sistema s.r.l., thereby causing financial and business injury to FAIP.

Sistema s.r.l.'s conclusory assertion that "[t]hese alleged 'acts' occurred in Indiana where [Sistema] USA is located," widely misses the mark. Judge Easterbrook provided an illustrative example in *Janmark*: "[I]f Reidy had intercepted a shipment of carts in New Jersey, placed a bomb in the crate and sent it back to Illinois, where the bomb exploded, the tort would occur 'within' Illinois even tough all of Reidy's acts were carried out in New Jersey." 132 F.3d at 1202. As a legal matter, the relevant inquiry is where the injury occurred, and not necessarily the location of the tortfeasor when it set in motion the acts that gave rise to the injury.

The declaration of Mr. Alexander conclusively establishes the nature of the injury in Illinois. Sistema's unsolicited attempt to obtain business from Home Depot, which is but one example, caused FAIP to "hold" its price during a negotiation for a price increase. (Alexander Decl. at ¶ 9). The Home Depot buyer himself was incredulous that Sistema -- a company he had never heard of -- could offer such aggressive pricing. Although FAIP was unaware of Sistema's illegal activities at that time, it has now become clear that Sistema obtained and used FAIP information to create the bid to Home Depot. (*Id.* at 10.) Moreover, Sistema's knowledge of FAIP's trade secrets implies that Sistema used such knowledge in each of its bids. It would have been impossible for Sistema to have separated its knowledge of FAIP's bids from its own proposals. FAIP's information, in the hands of a competitor such as Sistema, obviously would be used to FAIP's detriment. (*Id.* at 5.)

Nor can there be any doubt that Sistema itself (rather than its US distributor) was responsible for the offer to Home Depot. The unsolicited bid indicated that the pricing was "Exwork Italy," and the Home Depot buyer understood that the offer was "out of Italy." (Ex. A.) Sistema's misappropriation of FAIP's trade secrets, first through acquisition and subsequently through the use of such information to solicit business, subjects it to jurisdiction in Illinois.

### 2. Sistema s.r.l. Is Responsible for the Actions of its Agents

Although Sistema s.r.l. is independently subject to jurisdiction based on its own acts of misappropriation, it also bears responsibility for the tortious and improper actions of the other defendants inasmuch as Onay, Tobinski, Sistema USA were acting as Sistema s.r.l.'s agents. (Amended Complaint at ¶¶ 40-50, 60, 65, 71, 88, 112, 116.) Despite Sistema s.r.l.'s assertions to the contrary, a principal such as Sistema s.r.l. must answer for the tortious actions of its agents.

7

Corporate entities, as well as individuals, may act as agents. And, when a subsidiary is acting as its parent's agent, its contacts may be imputed to the parent. *Phenylpropanolamine (PPA) Products Liability Litigation v. Glaxosmithkline*, 344 F.Supp.2d 686, 691 (W.D. Wash. 2003).

A subsidiary acts as its parent's agent when the subsidiary represents the parent corporation, providing services that are "sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services." *Id.* That is, if the agent (subsidiary) substitutes for the presence of the principal (parent), the contacts of the subsidiary appropriately implicate the parent, at least for jurisdictional purposes. *Id.* at 692; *see also Liberty Mut. Fire Ins. Co. v. Reimer Exp. Enterprises, Ltd.*, 82 F.Supp.2d 887, 890 (N.D. Ill. 2000) (finding that where a foreign parent is sufficiently involved in the management of a subsidiary, personal jurisdiction over the subsidiary extends to the parent).

Sistema s.r.l. cannot avoid jurisdiction based on its below-refuted claim that "Sistema [s.r.l.] has no direct involvement in the daily operations of [Sistema] USA." (Motion to Dismiss at 8). Contrary to Sistema s.r.l.'s assertions, corporate formalities are not the only factor courts consider in determining the independence of a subsidiary. See *Central States*, 230 F.3d at 940 ("Illinois courts exercise jurisdiction over parents based on the activities of the subsidiary where the corporate veil can be pierced or perhaps where all the corporate formalities are observed but the subsidiary's only purpose is to conduct the business of the parent."(emphasis added)); *Japax, Inc. v. Sodick Co.*, 542 N.E.2d 792 (Ill. App. 1989) (finding jurisdiction where subsidiary's only purpose was to conduct the business of the parent, despite the apparent preservation of corporate formalities). Exemplary factors include setting prices, providing guarantees of payment, obligation to service the parent's products, authority to police the parent's trademarks, commonality of directors, percentage ownership of the subsidiary, evaluation by the parent of subsidiary performance, sharing employees, and lending money.

As made clear in the Home Depot email discussed above, Sistema USA has acted interchangeably with Sistema s.r.l. by many of the above measures, and performs several functions that Sistema s.r.l. would otherwise have to perform. *PPA Products*, 344 F.Supp.2d at 691-92. Moreover, Sistema s.r.l.'s own website indicates that "The addition of Sistema USA brought sales, technical support and warehousing of products to customers in North America." (Cochran Decl. at Ex. 1). Sistema USA provides warranty servicing and product support for

8

Sistema s.r.l.'s products. (*Id.*; *see also* Alexander Decl., at Ex. A.) Two of the three officers of Sistema s.r.l. are the same as two of the three officers of Sistema USA. (Affidavit of Egidio Zancanari at ¶¶ 6, 10.) The president of Sistema s.r.l., Egidio Zancanari, owns 80% of the stock in Sistema USA, and the only other shareholder is Onay, who owns 20%. (Cochran Decl. at Ex. 4.) Zancanari has journeyed to the United States routinely for at least the last seven years to attend numerous trade shows, at which events he has been seen meeting with U.S. and North American retailers. (Alexander Decl. at ¶¶ 13-17.) In addition, Sistema s.r.l. was likely a signatory on Sistema's sales transactions with substantial retailers in the United States. (*Id.*) While Sistema s.r.l. has argued that Sistema USA is a completely independent entity based on alleged compliance with corporate formalities, the realities of a new, untested distributor such as Sistema USA against the exacting standards of major U.S. retailers belie such independence. (Alexander Decl. at ¶¶ 18-19.)

Retailers such as Home Depot, Walmart, and Meier typically and predictably require several conditions before agreeing to purchase products for sale in their stores. (*Id.*) First, the seller must have adequate credit history. (*Id.*) Second, in contracts for power tools such as pressure washers, the seller must be able to present proof of certification of the product by Underwriters' Laboratories (UL), either in the form of a Certificate of Compliance (for manufacturers) or a Certificate of Conformity Assessments (for third parties such as distributors or importers). (*Id.* at ¶ 20.) Third, the seller must have discretion to negotiate and set the price of the product. (*Id.* at ¶ 9.) Sistema s.r.l.'s allegation that Sistema USA has always been an independent corporate entity is not logical in view of these extensive demands.

Sistema USA simply does not have had sufficient corporate history to satisfy the demands of major retailers. (*Id.* at ¶ 19.) Absent such a history, routine practice in the industry dictates that Sistema s.r.l. would have been required by retailers either to execute the agreement or to provide assurances or guarantees of Sistema USA's performance. (*Id.*) Moreover, by all publicly available indications, Sistema USA does not hold either a Certificate of Compliance or a Certificate of Conformity Assessment from UL. (*Id.* at ¶ 21.) Without proof of UL certification, no major U.S. retailer would be willing to purchase Sistema pressure washers. (*Id.* at ¶ 20.)

Finally, Sistema s.r.l. obviously retains the discretion to negotiate and set the prices of the products. (*See* Ex. A.) Sistema s.r.l. set prices "Exwork Italy," thereby assuming one of the key functions used to determine the independence of a subsidiary. (Alexander Decl. at ¶ 9.) Sistema

9

is thus subject to jurisdiction as the activities of its agents, Onay, Tobinski and Sistema USA may be attributed to it for purposes of the jurisdictional analysis.

### C. Sistema Is Subject to this Court's Personal Jurisdiction Under Rule 4(k)(2)

Independently of the Illinois long-arm statute, Federal Rule of Civil Procedure 4(k)(2) provides that where service of process is effective in a case arising under federal law, personal jurisdiction is proper within the limits of the *Fifth Amendment* due process clause of the United States Constitution. This rule has been held to allow the aggregation of a defendant's contacts with the entire United States to satisfy due process concerns where, as shown in Ex. 3 of the Cochran Declaration, the defendant denies that jurisdiction in any single state is appropriate. *ISI Int'l, Inc. v. Borden Ladner Gervais*, LLP, 256 F.3d 548, 552 (7th Cir. 2001) ("If, however, the defendant contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible, then the federal court is entitled to use Rule 4(k)(2).").

Counts I and II of the Amended Complaint are brought under 18 U.S.C. § 1030 et seq., the Computer Fraud and Abuse Act ("CFAA"), and 18 U.S.C. § 2701 et seq., the Stored Communications Act ("SCA"). In response to these claims, Sistema s.r.l. has denied that it is subject to jurisdiction in any state. (Cochran Decl. at Ex. 3.) Because the present case includes a federal claim not otherwise providing for service of process, and defendant Sistema s.r.l. denies that it is subject to jurisdiction in any state, Fed. R. Civ. P. 4(k)(2) allows this Court to consider all of Sistema s.r.l.'s contacts with the United States in establishing personal jurisdiction.

Although FAIP has not been granted an opportunity to take discovery of Sistema, a review of publicly available information indicates that Sistema has availed itself of numerous jurisdictions within the United States. Sistema s.r.l. holds at least two United States trademarks, including the word mark "SISTEMA" in connection with, inter alia, "high pressure cleaning appliances." (Cochran Decl. at ¶ 5, Ex. 5.) Sistema s.r.l. is also the owner, by assignment, of U.S. Patent Application No. 10/763,264. (*Id.* at ¶ 6, Ex. 6.) By virtue of owning these two federally-protected forms of intellectual property in the United States alone, Sistema s.r.l. is subject to jurisdiction under a national contacts analysis. It has reserved for itself the right to use the intellectual property, license it (i.e., enter into contracts relating to it), and enforce its rights against others in U.S. courts. Indeed, in *Miller Pipeline Corp. v. British Gas, PLC*, the court held under a "national contacts" analysis that the existence of even a single patent was sufficient to establish jurisdiction over the defendant:

> [A]s a foreign holder of a U.S. patent, British Gas is also potentially subject to suit in the District Court for the District of Columbia under 35 U.S.C. § 293. It would be illogical to hold that a defendant whose contacts with at least one state are sufficient to support jurisdiction, and which is also potentially subject to jurisdiction in the District of Columbia, nonetheless has insufficient contacts with the United States to support jurisdiction in a federal court.

901 F.Supp. 1416, 1423 (S.D. Ind. 1995). In deliberately securing patent and trademark protections, Sistema availed itself of the benefit of U.S. laws and cannot complain of being haled into a court in the United States.

Additionally, as provided in Mr. Alexander's declaration, Sistema s.r.l. holds the UL registrations on the pressure washers sold in the United States. (Alexander Decl. at ¶ 21, Ex. B.) UL Agreements routinely include the statement "Any action related to the Agreement shall be filed in the federal or state court having jurisdiction in Cook County, Illinois, USA. The parties consent to the exercise of personal jurisdiction of that court…." (Cochran Decl. at ¶ 7, Ex. 7.) Sistema itself thus appears to have agreed to accept jurisdiction in the United States, and in federal or state court in Illinois in particular.

As discussed above, Sistema sends into the United States millions of dollars of pressure washers on an annual basis (*Id.* at Ex. 4), applies for and holds intellectual property issued by the United States Patent and Trademark Office (*Id.* at Ex. 5), stands behind "manufacturers" warranties and guarantees issued to purchasers in the United States (Alexander Decl. at Ex. A), has obtained an Underwriters' Laboratories certification that it applies to each and every Sistema pressure washer sold in the United States (*Id.* at ¶ 21, Ex. B), and routinely attends trade shows throughout the United States in order to conduct and further its business (Alexander Decl. at ¶¶ 13-17). In attending these trade shows, many of which took place in Chicago, Illinois, Mr. Zancanari has been observed in meetings with representatives of major U.S. retailers, including Sam's Club, Sam's Club Puerto Rico, Walmart, Target, and Northern Tool and Equipment Company. (Id. at ¶ 16.) These meetings were likely intended to result in the sales of pressure washers manufactured by Sistema s.r.l. to U.S. retailers for resale to consumers. (Id. at ¶ 17.) Taken together, Sistema's business dealings, commercial objectives, and intellectual property rights show a strong connection with the United States.

Finally, the specific jurisdiction considerations discussed above with respect to the Illinois long-arm statute are also relevant in evaluating Sistema's national contacts. In causing

11

its agents to procure FAIP's confidential information and in receiving FAIP's confidential information, as well as in receiving commercial and competitive benefit, at FAIP's expense and in violation of several state and federal laws, Sistema s.r.l. has made many contacts with the United States. In view of all of these contacts, this Court should ensure that Sistema does not reap the benefits of U.S. legal protections at its convenience and simultaneously avoid liability for its malfeasance.

### D. Exercise of Jurisdiction Over Sistema Will Not Violate Traditional Notions of Fair Play and Substantial Justice

Sistema concludes its argument regarding personal jurisdiction by conceding that "minimum contacts" may indeed exist. It argues, however, that "it would also be unfair and unjust to require Sistema to defend against Plaintiff's claims in this forum." (*See* Defendants' Memo. at p. 11.) Given the facts of this case, there is nothing unfair about requiring Sistema to answer for its conduct in this Court. To the contrary, injustice would result only if the Court permitted Sistema to avoid facing the consequences of its actions.

Sistema had the opportunity to deny the operative facts of the Amended Complaint. It did not do this. Mr. Zancanari's declaration sets forth several statements regarding Sistema's purported lack of activity in Illinois, but he completely sidesteps the crucial allegations that Sistema misappropriated confidential information from FAIP's Elk Grove, Illinois headquarters. His studied avoidance of the central issue leads to only one conclusion: Sistema had and has possession of misappropriated FAIP trade secrets.

FAIP will undoubtedly suffer additional injury if Sistema is not enjoined from continuing to use the trade secret information that it has already misappropriated. *See* 765 ILCS 1065/3(a) (authorizing a court to enjoin either "actual or threatened misappropriation"). The unrebutted allegations of the Amended Complaint as well as Mr. Alexander's declaration demonstrate Sistema's willingness to use FAIP information to advance its sales agenda in the United States, and there is nothing in the record suggesting that Sistema will voluntarily stop its illegal activities directed against FAIP if this Court refuses to exercise jurisdiction over it.

Sistema's jurisdictional argument, if accepted, would amount to a "get out jail free" card. Sistema could continue to target FAIP in Illinois, and then argue that the Illinois courts are powerless to stop its activities because it is located in Italy. This cannot be, and is not, the law. Sistema, which does millions of dollars worth of business in the United States, is not immune from suit. The Supreme Court's jurisprudence on this issue, as established in cases such as

12

*Calder v. Jones*, authorize courts in the states affected by tortious activity to exercise jurisdiction over a non-resident tortfeasor without running afoul of the due process clauses of either the Fifth or Fourteenth Amendments. This law is particularly sound where, as here, a defendant argues that *no* court may exercise jurisdiction over it. Sistema's unfounded arguments regarding "fairness" should be rejected.

### E. Discovery Is Warranted

The allegations in the Amended Complaint and the evidence submitted in this Opposition should satisfy FAIP's initial burden of establishing a prima facie case of personal jurisdiction. To the extent that the Court is not convinced, however, fairness dictates that FAIP be afforded an opportunity to conduct jurisdictional discovery. *See Wells v. Hospital Group of Illinois, Inc.*, 2003 WL 21704416, * 3 (N.D. Ill. 2003) ("Generally, courts grant discovery on the jurisdictional issue if the plaintiff can show that the factual record is at least ambiguous or unclear on the issue.")

Dismissal of Sistema prior to discovery at this stage of the proceedings would be premature and prejudicial to FAIP's interest in securing the most relevant evidence of wrongdoing by Sistema s.r.l., Sistema USA, Onay, and Tobinski. Dismissal of Sistema also would effectively exclude Sistema from any compelled discovery or even an injunction against use of FAIP's confidential information and trade secrets that are in its possession. Accordingly, considerations of efficiency, as well as fairness, militate in favor of retaining Sistema s.r.l. as a party to this case, or, at a minimum, proceeding with discovery before dismissal.

### IV. NO COUNT OF FAIP'S AMENDED COMPLAINT IS PREEMPTED

Counts IV, VII, VII, and IX of FAIP's Amended Complaint stand independent of the Illinois Trade Secrets Act ("ITSA") and accordingly, they are not preempted. Section 8(b) of the ITSA specifically provides that the ITSA does not affect civil remedies not based upon misappropriation of a trade secret, nor does it affect contract remedies or criminal remedies, regardless of whether the contract or criminal action is based on misappropriation of a trade secret. Counts IV (Unfair Competition by the Sistema Defendants), VII (Tortious Interference with the Tobinski Conflict of Interest Agreement by the Sistema Defendants), VIII (Breach of Fiduciary Duty by Tobinski), and IX (Inducement of Breach of Fiduciary Duty) are based on activity over and above the transmission of trade secrets, and factual allegations associated with each of the counts are listed in the Amended Complaint. Unfair competition associated with

13

breach of fiduciary duty is well recognized as providing a separate cause of action, actionable outside of the ITSA. *See, e.g., Lucini Italia Co. v. Grappolini*, 231 F.Supp2d 764 (N.D. Ill. 2002); *MG Capital v. Sullivan*, 2001 WL 1609382 (N.D. Ill. 2001).

Count IV of the Amended Complaint alleges that one or both Sistema defendants have engaged in unfair competition with FAIP by benefiting from Tobinski's acts on their behalf during his employment with FAIP. The portions of these acts that are independent of the trade secret misappropriation should be allowed to stand. Count IV also alleges the commission of criminal acts under the Computer Fraud and Abuse Act and the Stored Communications Act, remedies for which are not preempted by the ITSA.

The essence of FAIP's unfair competition claim is that the Sistema defendants should not be allowed to engage in a raft of illegal and unethical conduct in order to compete with FAIP. As alleged in the Amended Complaint, the Sistema defendants essentially recruited Defendant Tobinski as a "mole." At the behest of the Sistema defendants, he covertly spied on FAIP and its officers, directors and employees, and directly or indirectly competed against FAIP and for Sistema while still in FAIP's employ. After leaving FAIP, he and Defendant Onay illegally hacked into FAIP's computer systems in order to continue the illicit surveillance and intelligence gathering undertaken by and for the Sistema corporate defendants. Based on this pattern of activity, FAIP is not required to shoehorn its claim against the Defendants into a charge of trade secret misappropriation. This activity is certainly actionable under the broad concepts of unfair competition regardless of the existence or non-existence of any trade secret.

Turning to Count VII, FAIP alleges here that the Sistema defendants tortiously interfered with Tobinski's contract with FAIP not to compete with FAIP or solicit FAIP's suppliers, customers, employees, and/or consultants. Because this action arises out of a breach of a contract, remedies are not preempted by the ITSA.

Count VIII of the Amended Complaint alleges that Tobinski breached his fiduciary duty by working on behalf of one or both Sistema defendants USA while employed by FAIP, and by competing against FAIP and soliciting suppliers, customers, employees, and/or consultants from FAIP for the benefit of one or both Sistema defendants. By working on behalf of one or both Sistema defendants while still in the employ of FAIP, Tobinski betrayed FAIP. He assisted Sistema in competing against his employer, to whom he owed fiduciary duty, and such conduct has been found actionable outside of the ITSA. *MG Capital*, 2001 WL 1609382 at *4. Breach

of fiduciary duty is a claim that has regularly survived preemption arguments. *Lucini Italia*, 231 F.Supp.2d at 770. To the extent that Tobinski held himself out as representing FAIP's interests to suppliers, customers, employees and/or consultants, while actually representing the interests of Sistema, Count VIII stands independently from FAIP's other claims against Tobinski under the ITSA. Tobinski held a position of trust with FAIP, and his conduct in using that position to place his own interests, Sistema's competitive interests, ahead of FAIP's, states a claim for breach of fiduciary duty outside of the ITSA. *Id.* Likewise, to the extent that Tobinski breached his fiduciary duty by engaging in criminal activities using FAIP's computer system, Count VIII is not preempted under the ITSA.

As described above, Tobinski's activity in breach of his fiduciary duty to FAIP is well aligned with caselaw finding that no preemption has occurred. For the same reasons, Count IX alleging that Onay and the Sistema defendants induced Tobinski's breach of fiduciary duty also stands independently of the ITSA.

## V.  CONCLUSION

The Court can, and should, exercise jurisdiction over Sistema s.r.l., a party whose presence is necessary for complete relief in this action. In the alternative, the Court should at least permit FAIP to take reasonable discovery into Sistema s.r.l.'s contacts with the United States in general and Illinois in particular. In addition, Defendants' complaints regarding ITSA preemption are misplaced. The non trade-secret state law counts of FAIP's Amended Complaint do not hinge upon the existence (or potential existence) of trade secrets and thus should be answered by all Defendants. For the foregoing reasons, Defendants' motion to dismiss should be denied in its entirety.

|  |  |
|---|---|
|  | Respectfully submitted |
| Dated: October 24, 2005 | _s/David M. Airan_____ |
|  | FILED ELECTRONICALLY |
|  | Dennis R. Schlemmer (IL # 04287349) |
|  | David M. Airan  (IL #06215687) |
|  | Aaron R. Feigelson (IL #6279091) |
|  | LEYDIG, VOIT & MAYER, LTD. |
|  | Two Prudential Plaza, Suite 4900 |
|  | Chicago, Illinois 60601 |
|  | (312) 616-5600 |
|  |  |
|  | Attorneys for Plaintiff |
|  | FAIP North America, Inc. |

15

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS was served this 24th day of October, 2005 upon Defendants' counsel of record in the manner specified:

BY ELECTRONIC MAIL:
James R. Pittacora
Bernard F. Crotty
Pittacora & Crotty, LLC
566 W. Lake Street, #200
Chicago, IL 60661
Tel: (312) 602-1070
Fax: (312) 602-1071

COURTESY COPY TO BE DELIVERED BY US MAIL ON OCTOBER 25, 2005


Dated: October 24, 2005           _s/David M. Airan_____
                                             Attorney for Plaintiff
                                             FAIP North America, Inc.