UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION


FAIP NORTH AMERICA, INC.,                )
                                         )
                    Plaintiff,           )
                                         )
        vs.                              )        05 C 4002
                                         )
SISTEMA s.r.l., et al.,                  )
                                         )
                    Defendants.          )


## MEMORANDUM OPINION

CHARLES P. KOCORAS, Chief District Judge:

The following matter comes before the court on Defendants', Sistema s.r.l.
("Sistema"), Sistema USA, Inc. ("USA"), Gokalp Onay ("Onay"), and John Tobinski
("Tobinski"), (collectively referred to as "Defendants"), Motion to Dismiss Plaintiff's,
FAIP North America, Inc. ("FAIP"), amended complaint pursuant to Fed. R. Civ.
P. 12(b)(2) and (6).  For the reasons set forth in the opinion below, Defendants' Motion
is denied.

## BACKGROUND

FAIP is an Illinois corporation with its principal place of business in Elk Grove,
Illinois.  Sistema is an Italian corporation with its principal place of business in
Villafranca di Verona, Italy.  USA is an Indiana corporation with its principal place of

business in Evansville, Indiana. Onay is a resident of Newburgh, Indiana, and Tobinski is a resident of Evansville, Indiana. We assume the truth of the following facts for the purposes of this Motion.

FAIP, Sistema, and USA are in the business of developing, manufacturing, selling, and distributing electric pressure washers, pumps, and high pressure hoses. USA's pressure washers are manufactured, at least in part, by its parent entity, Sistema. Sistema's website advertises USA as its North American branch for selling pressure washers.

An important part of FAIP's business includes the development of trade secrets and other proprietary confidential information related to its products. This confidential information includes, but is not limited to, the machines, tools, and appliances used in FAIP's products; the methods and processes of producing such products; the products' specifications; the methods and results of FAIP's research efforts; and FAIP's marketing and financial information, which includes actual and potential customer lists and cost and profit information. In order to keep their confidential information secret, FAIP requires all of its employees to sign confidentiality agreements. When employment is terminated, FAIP conducts exit interviews wherein former employees are reminded of their confidentiality obligations. In addition, all of FAIP's computer systems and technical information are password protected. As FAIP employees, Onay

and Tobinski had access to a majority of FAIP's confidential information and were required to sign the requisite confidentiality agreements.

According to FAIP, Onay left on poor terms and violated his confidentiality agreement when he went to work for USA. Onay allegedly left FAIP after attempting to undermine a business deal between FAIP and one of its suppliers. FAIP asserts that Sistema induced USA to hire Onay because he had knowledge regarding FAIP's confidential information. FAIP alleges Onay disclosed the confidential information and began, or at least tried, to sell Sistema washers to potential FAIP customers. FAIP specifically alleges that Onay used his knowledge of FAIP's customers and pressure washer pricing in an attempt to outbid a business deal with Home Depot. In essence, FAIP believes that Onay is directly assisting the Sistema Defendants, by way of his knowledge of FAIP's confidential information, to compete against it in the North American pressure washer market.

FAIP also believes that the Sistema Defendants recruited and employed Tobinski because of his knowledge of FAIP's confidential information. Tobinski remained a FAIP employee until August, 2003 and also had access to its confidential information. While so employed, Tobinski allegedly remained in contact with Onay and provided him with confidential information regarding FAIP's business opportunities and pressure washer products and programs. FAIP contends that from February 1999 to

August 2003, Tobinski violated his Conflict of Interest Agreement by providing this confidential information to Onay and the Sistema Defendants. As with Onay, once Tobinski became a USA employee, FAIP asserts that he shared additional confidential information with one or both of the Sistema Defendants. Specifically, FAIP submits that Tobinski used a false password to log-in to FAIP's computer system and, without FAIP's authorization, allegedly accessed an email account and other confidential data.

On September 9, 2005, FAIP initiated this suit against the Defendants, and on September 19, 2005, filed a nine-count amended complaint alleging: (1) violation of the Computer Fraud and Abuse Act; (2) violation of the Stored Communications Act; (3) misappropriation of trade secrets; (4) unfair competition; (5) breach of contract by Onay; (6) breach of contract by Tobinski; (7) tortious interference with contract; (8) breach of fiduciary duty; and (9) inducement of breach of fiduciary duty. Defendants bring the instant Motion to Dismiss the amended complaint, or portions thereof, on the basis that: (1) FAIP fails to establish personal jurisdiction over Sistema; and (2) the Illinois Trade Secret Act ("ITSA") bars Counts IV, VII, VIII, and IX.

## LEGAL STANDARDS

### A. Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2)

Fed. R. Civ. P. 12(b)(2) governs motions to dismiss based upon lack of personal jurisdiction. Under this rule, the burden of proof rests upon the party asserting

jurisdiction; however, this party is only required to make a *prima facie* showing that jurisdiction exists.  See Saylor v. Dyniewski, 836 F.2d 341, 341 (7th Cir. 1988).  In a motion to dismiss based upon lack of personal jurisdiction, the court must accept all well-pleaded facts within the complaint as true, resolve all factual disputes in favor of the party asserting jurisdiction, and draw any reasonable inferences from those facts in the asserting parties favor.  Dawson v. General Motors Corp., 977 F.2d 369, 372 (7th Cir. 1992).

**B. Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)**

When considering a 12(b)(6) motion to dismiss, a court evaluates the legal sufficiency of a plaintiff's complaint, not the merits.  Gibson v. City of Chi., 910 F.2d 1510, 1520 (7th Cir. 1990).  We must accept all well-pleaded allegations as true and will not dismiss a case for failure to state a claim unless the plaintiff cannot prove any facts sufficient to support his claim.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  All inferences are to be drawn in a light most favorable to the plaintiff.  Jackson v. E.J. Branch Corp., 176 F.3d 971, 978 (7th Cir. 1999).  To survive a motion to dismiss, a plaintiff need only provide a "short and plain statement" under Rule 8(a)(2); the particulars of the claim are not required.  Midwest Gas Servs. v. Ind. Gas. Co., 317 F.3d 703, 710 (7th Cir. 2002).  Nonetheless, to withstand a motion to dismiss, a

complaint must allege facts that set forth the essential elements of the cause of action. Doherty v. City of Chi., 75 F.3d 318, 326 (7th Cir. 1996).

## DISCUSSION

### A. 12(b)(2) - Personal Jurisdiction

When a case comes before a court on the basis of diversity jurisdiction, a federal district court in Illinois may exercise personal jurisdiction over a nonresident defendant only if an Illinois state court would have jurisdiction. See RAR Inc. v. Turner Diesel, Ltd., 107 F.3d 1272, 1275 (7th Cir. 1997); Dehmlow v. Austin Fireworks, 963 F.2d 941, 945 (7th Cir. 1992). Under the Illinois long-arm statute, a court may exercise jurisdiction over nonresident defendants for a cause of action arising from acts such as transacting any business within the state, committing a tortious act within the state, or making or performing any contract or promise substantially connected with the state. 735 ILCS 5/2-209(a). Furthermore, the statute provides that a court may exercise jurisdiction on any basis permitted by either the Illinois or federal constitutions. 735 ILCS 5/2- 209(c). To determine the reach of Illinois due process, courts look to Federal Due Process limits on jurisdiction. RAR, 107 F.3d at 1276-1277.

Personal jurisdiction can be either general or specific. General jurisdiction arises when a defendant's activities are continuous and systematic, to the extent that it is proper for a court to exercise jurisdiction over the party for any action it takes. See

Helicopteros Nacionales de Colombia, SA v. Hall, 466 U.S. 408, 104 S. Ct 1868 (1984). Specific jurisdiction, by contrast, can be exercised when a suit arises out of or is related to the defendant's contacts with the forum. See id. at 414 n.8. We agree with Defendants that we do not have general jurisdiction over Sistema because its contacts in Illinois are not continuous and systematic; however, the determination of specific jurisdiction is more complicated.

FAIP's amended complaint alleges that the Sistema Defendants used Onay and/or Tobinski, as their agent(s), to access confidential information related to its sales and marketing efforts and its technology. Much of this information is allegedly located in FAIP's computer and email systems in Illinois. FAIP also alleges that, either separately or jointly, the Defendants used this information as a means of unfair competition. Sistema contends that this court does not have specific personal jurisdiction over it for three reasons: 1) the acts allegedly committed by Onay and Tobinski occurred outside of Illinois; 2) it did not purposefully establish minimum contacts with Illinois, and thus the establishment of such jurisdiction would offend traditional notions of fair play and substantial justice; and 3) USA's activities cannot be attributed to it to establish jurisdiction.

We find Sistema's first argument to be without merit because the Seventh Circuit has held that specific jurisdiction lies in the place of injury, even despite the fact that

the wrongdoer's actions may have occurred in another state.  Janmark, Inc. v. Reidy, 132 F.3d 1200, 1202 (7th Cir. 1997).  FAIP alleges that Onay, Tobinski, and USA's activities, occurring outside Illinois, resulted in foreseeable damages within Illinois.  Therefore, the fact that Onay and Tobinski's actions occurred outside Illinois is by itself not a bar to specific personal jurisdiction.

Next, Sistema argues that even if we find "minimum contacts" to exist, asserting personal jurisdiction over it would violate traditional notions of fair play and substantial justice.  We believe the opposite to be true.  If we agreed with Sistema, it would set a precedent that foreign companies can "reap the benefits and advantages of doing business directly while insulating themselves from lawsuits by using separate subsidiaries and distribution networks to implement their business activity." Japax, 542 N.E.2d at 665.  Accordingly, we believe the threshold issue, raised by Defendant's third argument, is whether or not the alleged wrongdoings of USA can be attributed to Sistema to establish specific personal jurisdiction.

Generally, "the parent-subsidiary relationship is insufficient to confer personal jurisdiction." Integrated Bus. Info. Serv. Ltd. v. Dun & Radstreet Corp., 714 F. Supp. 296, 299 (N.D. Ill. 1989).  However, because parent companies necessarily exercise some control over their wholly owned subsidiaries, there must be some "basis for piercing the corporate veil and thus attributing the subsidiaries' torts to the parent."

IDS Life Ins. Co. v. America Life Ins. Co., 136 F.3d 537, 540 (7th Cir. 1998). Personal jurisdiction is not established where "corporate formalities are substantially observed and the parent does not exercise an unusually high degree of control over the subsidiary." Central States S.E. and S.W. Areas Pension Fund v. Reimer Express World Corp., 230 F.3d 934, 944 (7th Cir. 2000). Although control is a requisite to establish specific personal jurisdiction, *total control is not*. (emphasis added) Liberty Mutual Fire Ins. Co. v. Reimer Express Enter., Ltd., 82 F. Supp.2d 887, 890 (N.D. Ill. 2000); See Japax, Inc. v. Sodick Co. Ltd., 542 N.E.2d 792, 797 (1989).

In Japax, the court found specific personal jurisdiction over a foreign company on the plaintiff's allegations that the company indirectly sold and advertised its products in Illinois, loaned employees and money to its Illinois subsidiary, had a distributor agreement with an Illinois corporation, and had a distributor with a sales office in Illinois. 542 N.E.2d at 796. In IDS Life Insurance, the Seventh Circuit recognized that it could also exercise specific personal jurisdiction over a parent company if the subsidiaries were acting as its agents. 136 F.3d at 540. Sistema argues that a subsidiary-parent relationship is alone not enough to establish specific personal jurisdiction. We agree. However, in viewing the disputed facts in a light most favorable to FAIP, it becomes apparent that it has met the *prima facie* burden for establishing specific personal jurisdiction.

FAIP contends that Sistema is responsible for the actions of USA and its agents because (1) it shares two of the three corporate officers with USA; (2) its own president owns 80% of USA's stock; (3) its president routinely travels to the United States for trade shows; (3) it relies on USA to perform functions it would normally perform as indicated by Onay's role in the Home Depot bidding incident; (4) it allegedly negotiates and sets the prices for such transactions and for its products; (5) it allows USA to act as a guarantor in warranty servicing and product support agreements for its products; (6) Sistema's website advertises USA as its North American branch; and (7) it executes agreements or provides assurances that USA will perform as promised because USA does not have the sufficient corporate history to satisfy the demands of major retailers. Contrary to the alleged relationship put forth by FAIP, Sistema argues that specific personal jurisdiction does not exist because the entities maintain separate corporate formalities. As previously noted, Sistema's complete reliance upon corporate formalities is not dispositive.

In Central States, the Seventh Circuit indicated that Illinois courts can exercise jurisdiction over parent corporations "where all the corporate formalities are observed but the subsidiary's only purpose is to conduct the business of the parent." 230 F.3d at 940. Consequently, Sistema's argument is nullified and the alleged facts FAIP puts forth support a reasonable inference that USA's only purpose is to conduct Sistema

business and, therefore, FAIP has met its burden of establishing a *prima facie* case for

specific personal jurisdiction. Accordingly, Defendant's Rule 12(b)(2) Motion is

denied.

## (B) 12(b)(6) - ITSA Preemption Claims

Defendants next contend that Counts IV (Unfair Competition), VII (Tortious

Interference with Contract), VIII (Breach of Fiduciary Duty) and IX (Inducement of

Breach of Fiduciary Duty) (collectively referred to as "contested counts") of FAIP's

amended complaint are barred by the ITSA. In pertinent part, the ITSA provides:

> (a) except as provided in subsection (b) this act is intended to displace
> conflicting tort, restitutionary, unfair competition, and other laws of this
> State providing civil remedies for *misappropriation of a trade secret.*
> (b) This Act does not affect:
> (2) other civil remedies that are not based upon misappropriation of a
> trade secret . . ..

(Emphasis added) 765 ILCS 1065/8(a).

The Seventh Circuit has recognized that Illinois' passage of the ITSA has

resulted in the abolishment of "all common law theories of misuse of [trade secret]

information." Composite Marine Propellers, Inc. v. Van Der Woude, 962 F.2d 1263,

1265 (7th Cir. 1992). The ITSA defines trade secret as:

> information, including but not limited to, technical or non-technical data,
> a formula, pattern, compilation, program, device, method, technique,
> drawing, process, financial data, or list of actual or potential customers or
> suppliers, that: (1) is sufficiently secret to derive economic value, actual
> or potential, from not being generally known to other persons who can

obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality.

765 ILCS 1065/2(d).

In sum, a defendant is only liable for the misappropriation of a trade secret under the ITSA and not under any other state law.  Thomas & Betts Corp. & Holdings, Inc. v. Panduit Corp. & Wimmer, 108 F. Supp. 2d 968, 971 (N.D. Ill. 2000).

Defendants contend that the contested counts are solely based upon the misappropriation of trade secrets and are therefore barred by the ITSA.  Defendants' arguments rest on the notion that the contested claims cannot be made without reliance on the misappropriation of FAIP's trade secrets alone.  In making their arguments Defendants rely heavily upon Thomas & Betts Corp., 108 F. Supp. 2d at 973, and Thermodyne Food Serv. Prods., 940 F. Supp. at 1309, both of which address motions for summary judgment where the plaintiffs made various claims alleging misappropriation of confidential information and trade secrets.  The Thomas & Betts Corp. and Thermodyne courts granted summary judgment on portions of the plaintiffs' claims, finding those portions to be solely dependant upon the misappropriation of trade secrets and therefore barred by the ITSA.

Unlike in Thomas & Betts, Corp. and Thermodyne, we find ourselves addressing a motion to dismiss where fact discovery is still open, instead of a motion for summary

judgment where fact discovery is closed. Therefore, in order to assess the present motion to dismiss, we must only consider whether FAIP alleges that each count is based solely upon the misappropriation of trade secrets, or upon wrongdoing of a different sort.

### i. Count IV - Unfair Competition

Count IV asserts the Sistema Defendants, either jointly or separately, engaged in unfair competition by using Tobinski's employment with FAIP to "wrongfully appropriate the fruits of [its] investments in connection to the U.S. pressure washer market." FAIP premises Count IV on Sistema and/or USA's use of Tobinski's employment at FAIP to pursue beneficial business opportunities by way of confidential information he misappropriated and provided them with. Essentially, Defendants contend that the confidential information FAIP bases count IV on was comprised of trade secrets entirely and therefore the count is barred by the ITSA. Although encompassing trade secrets, we believe confidential information is a broader category of information. We are unwilling to limit the alleged misappropriation of confidential information to merely trade secrets at this juncture. FAIP has yet to directly identify the nature of the alleged misappropriated confidential information, and at this point of the litigation they do not have to. Further, we believe it is reasonable to assume that misappropriated confidential information, not of trade secret nature, could give

-13-

Defendants an unfair advantage and therefore allow them to unfairly compete in the pressure washer market. Consequently, the Motion is denied as to count IV.

### *ii. Count VII - Tortious Interference*

To support Count VII, FAIP alleges that the Sistema Defendants, either separately or jointly, interfered with the Tobinski Conflict of Interest Agreement by enticing Tobinski to break his contract "to not compete against FAIP and/or solicit suppliers, customers, employees, and/or consultants from FAIP." Further, FAIP suggests that Sistema and USA knew or at least had reason to know about the contract. FAIP premises its claim, by incorporation, on the allegation that Tobinski provided the Sistema Defendants with FAIP's confidential information. As previously mentioned, we believe confidential information encompasses a broader amount of information than merely trade secrets. Therefore, once again we find it reasonable to assume that the Sistema Defendants could have committed the alleged harm by enticing Tobinski to breach his confidentiality agreement by providing them with confidential information not of a trade secret nature. Consequently, the Motion is denied as to count VII.

### *iii. Counts VIII & IX - Breach & Inducement of Breach of Fiduciary Duty*

Defendants contend that the ITSA preempts Counts VIII and IX because FAIP relies exclusively on Tobinski's alleged misappropriation of trade secrets in bringing such. Count VIII alleges that Tobinski disclosed FAIP's confidential, proprietary and trade secret information without authorization thereby breaching his fiduciary duty, that he worked on behalf of the Sistema entities while a FAIP employee, by soliciting suppliers, customers, employees, and/or consultants from FAIP for the benefit of either Sistema and/or USA, and that he used FAIP's computer to engage in criminal activities. Count IX incorporates the allegations of count VIII, and additionally alleges that the Sistema Defendants induced Tobinski to commit the wrongdoings resulting in the alleged breach. Once again, FAIP alleges that confidential material was utilized by Tobinski in breaching his fiduciary duty, and we find such to encompass more than merely trade secrets. Consequently, we find Counts VIII and IX to be predicated on more than the mere misappropriation of trade secrets alone. Therefore, the Motion is denied as to counts VIII and IX.

# CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss FAIP's amended complaint pursuant to Fed. R. Civ. P. 12(b)(2) and (6) is denied.

_____

Charles P. Kocoras
Chief Judge
United States District Court

Dated:    December 14, 2005